UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JONATHAN GASTON**, <br><br> Plaintiff, <br><br> vs. <br><br> **HENRY FORD HEALTH,** <br><br> Defendant. | 2:23-CV-12483-TGB-APP <br><br> **ORDER GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS AND DIRECTING SERVICE OF COMPLAINT** |

Jonathan Gaston, an individual without a lawyer, has filed a complaint against Henry Ford Health for violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Michigan Persons with Disabilities Civil Rights Act, MCL § 37.1101 et seq. ECF No. 1. He asks to proceed without prepaying filing fees. ECF No. 2. The case is before the Court for a review of that request and a screening of his complaint.

For the reasons below, Gaston's request to proceed in forma pauperis is **GRANTED**, and the United States Marshal is **DIRECTED** to attempt service on Henry Ford without prepayment of costs.

### I.     IN FORMA PAUPERIS APPLICATION

Gaston has filed an application to proceed in forma pauperis—that is, to proceed without prepaying filing fees. *See* 28 U.S.C.§ 1915(a)(1). In an affidavit, he attests that he has nothing in savings and not much in income. ECF No. 2. This affidavit is sufficient to show that Gaston has

1

limited financial means, so the Court will **GRANT** the application and allow Gaston's complaint to be filed. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 261 (6th Cir. 1990).

## II. INITIAL REVIEW OF COMPLAINT

Once an in forma pauperis complaint has been filed, the Court must review it to ensure that it states a plausible claim for relief, is not frivolous or malicious, and does not seek monetary relief against defendants immune from such relief. 28 U.S.C. § 1915(e)(2).

The complaints of litigants without lawyers must be interpreted indulgently. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nonetheless, all litigants must comply with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2)-(3). Rule 8 does not require "detailed" factual allegations, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

### A. Allegations

Gaston worked at Henry Ford Health Detroit Hospital as an emergency room environmental services associate for over six years until he was fired in March 2022. ECF No. 1, PageID.2.

According to his complaint, Gaston sustained multiple injuries to his foot on February 9, 2022. *Id.* at PageID.3. He told the hospital he

2

would need to take time off but continued working through his pain that day. *Id.* In the days that followed he was required to stay at home because of the hospital's COVID-19 protocols. *Id.* But he was back at work on February 16, despite being in significant pain. *Id.* When he told his supervisor about the pain, his supervisor told him to work through it. *Id.*

On February 17, Gaston told his supervisor that the pain had worsened, his foot was becoming discolored, he was planning to go to the emergency room after work, and he would not be in to work the next day. *Id.* An x-ray after his shift revealed two broken toes. *Id.*

Following the x-ray, on February 18, Gaston went into work to provide his supervisor with medical documentation and x-ray images. *Id.* He told his supervisor he was willing to continue working with reasonable accommodations. *Id.* at PageID.3-5. Gaston's supervisor, however, told him not to come back to work until he had authorization from a podiatrist—because, under the hospital's policy, Gaston could not do his job with restrictions. *Id.* at PageID.3-4.

On February 22 and February 23, Gaston called his supervisor to inform him that he would be off work because of his injuries. Gaston's supervisor told him that he did not need to continue calling in about his absences because they were covered by the documentation he had provided. *Id.* at PageID.4. But, Gaston alleges, his supervisor did not explain to him his rights under the FMLA and marked him with unapproved absences. *Id.* at PageID.6.

3

Gaston was unable to schedule an appointment with a podiatrist until March 2. *Id.* at PageID.4-5. At his appointment, he received a letter that he could return to work without restrictions on March 7. *Id.* at PageID.5. He provided this letter to the hospital immediately. *Id.* He says that multiple representatives from the human resources department told him he did not need to worry about returning to work until March 7.

But after Gaston's supervisor received a copy of the letter, he fired Gaston. *Id.* Human resources personnel told Gaston that they would "sort it out." *Id.* On March 4, a representative told him that the hospital had not received the letter. When Gaston tried to return to work on March 7, he was not allowed to do so. *Id.* He says that he was terminated because of the unapproved absences his supervisor had logged. *Id.* at PageID.7.

Over a year later, Gaston sued Henry Ford Hospital. His complaint asserts four claims: 1) interference with his rights under the FMLA; 2) retaliation for exercising his rights under the FMLA; 3) violation of his rights under the Americans with Disabilities Act; and 4) violation of his rights under the Michigan Persons with Disabilities Act.

### B. Discussion

#### 1. *Family Medical Leave Act*

The Family Medical Leave Act (FMLA) entitles "an eligible employee to take not more than 12 weeks of unpaid leave, or substituted paid leave, for reasons that include a serious health condition that makes the employee unable to perform the functions of his position." *Harris v.*

4

*Metro. Gov't of Nashville & Davidson Cty.*, 594 F.3d 476, 482 (6th Cir. 2010). Under the Act, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]." 29 U.S.C. § 2615(a)(1).

The Sixth Circuit recognizes that 29 U.S.C. § 2615 establishes two distinct theories of recovery: interference and retaliation. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

### a) Interference

To establish an interference claim, a plaintiff must show that: (1) he was an eligible employee under the FMLA; (2) the defendant was an employer under the FMLA; (3) he was entitled to take leave under the FMLA; (4) he gave his employer notice of his intention to take leave; and (5) the employer denied or interfered with his FMLA rights. *Edgar*, 443 F.3d at 507; *Denton v. Fairfield Med. Ctr.*, 11-00716, 2012 WL 2409224, at *3 (S.D. Ohio June 26, 2012). With regard to the notice requirement, "an employee does not have to expressly assert his right to take leave as a right under the FMLA" to trigger its protections. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999). The employee need only provide enough information for the employer to know that the leave requested could reasonably fall under the FMLA. *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 870, 872 (6th Cir. 2023).

Gaston alleges that, because he worked in excess of 1,250 hours in the preceding 12-month period, he is an eligible employee, and that,

5

because Henry Ford is a public agency employing more than 50 people for more than 20 calendar weeks, it is an employer under the FMLA. Further, he alleges that his foot injury was a serious condition entitling him to take leave, *see* 29 U.S.C. § 2612(a)(1)(D); that he gave notice of his intention to take leave by informing his supervisor that he was unable to work because of his injury; and that his supervisor interfered with his entitlement to take leave by failing to explain to him his rights under the FMLA, marking him with unapproved absences despite knowing of his injury, and ultimately terminating him on the basis of those absences.

At this stage, Gaston's allegations are sufficient. *See, e.g.*, *Miller v. Defiance Metal Prods., Inc.*, 989 F. Supp. 945, 946 (N.D. Ohio 1997) (termination due to absenteeism caused by medical condition constituted "an interference under FMLA"). Accordingly, he has stated a claim for interference with his rights under the FMLA.

**b) Retaliation**

To establish a retaliation claim, a plaintiff must show that: (1) he engaged in protected activity; (2) his employer knew he was engaged in such an activity; (3) his employer took an adverse employment action against him; and (4) the protected activity and the adverse action were causally connected. *Milman*, 58 F.4th at 867. Protected activities include both inquiring about and making requests for leave. *Id.* at 871.

Gaston alleges that he engaged in protected activity by making a request for leave because of his foot injury. Further, he says that his

6

employer knew about his request. He adds that his employer subjected him to adverse action by marking him with unapproved absences and ultimately firing him. Though he does not overtly allege a causal connection between the adverse actions and his leave request, the Court concludes that the temporal proximity between his request and his termination (while he was still on leave) are sufficient at this stage to support an inference of causation.

Accordingly, Gaston may proceed on his retaliation claim.

### 2. *Americans With Disabilities Act*

Title I of the ADA prohibits employers from discriminating against a qualified individual because of a disability. 42 U.S.C. § 12112(a). An employer's failure to grant a reasonable accommodation to a disabled employee falls under the ADA's definition of discrimination. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020). Under the 2008 amendments to the ADA, which expanded the Act's coverage, an impairment that substantially limits a major life activity is a covered disability, even if that impairment is "transitory and minor" (defined as lasting six months or less). *See* 42 U.S.C. § 12102(3)(B).

Generously construed, Gaston's allegations of broken toes are sufficient to allege a covered disability at this stage in proceedings. His complaint further alleges that he would have been able to perform the essentials functions of job if the hospital permitted him to work with an air cast or crutches until he was cleared for work by his doctor. Instead

7

of working with Gaston to determine whether it was possible to reasonably accommodate his disability, however, the hospital instructed him to remain home and ultimately fired him.

At this stage, this is enough to survive screening, and Gaston may proceed on his ADA claim.

### 3. *Michigan Persons with Disabilities Civil Rights Act*

The Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MCL § 37.1101 et seq., prohibits employers from "discharg[ing] or otherwise discriminat[ing] against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL § 37.1202(b).

The Sixth Circuit has recognized that the PWDCRA "substantially mirrors the ADA." *Donald v. Sybra*, 667 F.3d 757, 764 (6th Cir. 2012) (quotations omitted). Analysis of an ADA claim therefore "generally, though not always, [will] resolve the plaintiff's PWDCRA claim." *Id.*

As the Court is allowing Gaston to proceed under the ADA, he may also proceed on his claim under the PWDCRA.

### III. CONCLUSION

For the reasons explained above, Gaston's application to proceed in forma pauperis is **GRANTED.** The Court **DIRECTS** that a copy of the

complaint and a copy of this Order be served upon Defendants by the United States Marshal without prepayment of costs for such service.

**SO ORDERED** this 19th day of December, 2023.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge